**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE**

**CIVIL ACTION NO. 06-26-DLB**

**JOHN PERRY**                                                                                        **PLAINTIFF**


vs.                              **MEMORANDUM OPINION & ORDER**


**JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**

******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff John Perry filed an application for a period of disability and disability insurance benefits (DIB) on May 2, 2003. His application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held via video conference on November 4, 2004. On March 23, 2005, ALJ Don Paris issued an unfavorable decision, finding that Plaintiff was not disabled. When the Appeals Council denied Plaintiff's request for further review, the ALJ's decision became the final decision of the Commissioner on Plaintiff's claim.

Plaintiff, who was 52 years old at the time of the hearing, completed a ninth grade education and alleges an inability to work beginning on November 22, 2002, due to carpel

1

tunnel syndrome (CTS), prostate problems, heel spurs, plantar fasciitis, black lung disease, pain in his left ankle, numbness and pain in his left thigh, back disorder, bad nerves, high blood pressure, tinnitus/tintinitis (ringing in his ears), and vision problems.  At the hearing before the ALJ, Plaintiff also indicated that he cannot use his hands; he has numbness and tingling in his hands and wears wrist braces at night; his feet and left ankle hurt constantly; whenever he lifts something, his prostate goes out; he can walk a quarter mile, stand for approximately 15 minutes, sit for approximately 20 minutes, lift no more than 20 pounds, and can bend/stoop; he has a noise in his head; and experiences shortness of breath.

Having exhausted his administrative remedies, Plaintiff filed the instant suit on January 27, 2006.  The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II.  DISCUSSION

### A.     Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 18). At Steps 2 and 3, the ALJ found that Plaintiff's affective/adjustment disorder, obesity, and mild chronic obstructive pulmonary disease (COPD) constitute severe impairments, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18-19). At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a significant range of medium level work. Specifically, the ALJ found that Plaintiff can:

> lift/carry/push/pull 50 pounds occasionally and 25 pounds frequently; stand/walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. However, because of his very mild chronic obstructive pulmonary disease, he should avoid concentrated exposure to fumes, odors, dusts, or gases, and he should also avoid concentrated exposure to extreme heat or cold. He additionally suffers from an adjustment disorder; however, he has the mental capacity to understand, remember, and carry out simple instructions as well as maintain attention for two hour segments. He is able to make simple work-related decisions and judgments, respond appropriately

3

> to supervisors and co-workers, and deal with routine changes in a simple work task setting.

(Tr. 20).

Based upon these findings, the ALJ concluded that Plaintiff is unable to perform his past relevant work as a mechanic or equipment operator. (Tr. 22). At Step 5, however, the ALJ found that there are a significant number of jobs Plaintiff can perform despite his limitations, including assembly work, hand packer, and production work. (Tr. 23). This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.   Analysis**

Plaintiff advances several arguments on appeal. First, he argues that the ALJ erred in failing to find that his carpal tunnel syndrome (CTS) constitutes a severe impairment, and considering the effect of this impairment on his ability to work. In support, he relies on: 1) a litany of treatment notes reflecting a diagnosis of CTS, as well as constant complaints of hand and wrist pain, 2) motor and nerve conduction studies performed on September 25, 1998, the results of which were "consistent with bilateral carpal tunnel syndrome" (Tr. 326), and 3) his own hearing testimony. *See supra* p.2. Plaintiff also argues that the ALJ erred in failing to accord proper weight to the opinion of consultative examiner Dr. Stephen Lamb. According to Plaintiff, the ALJ improperly rejected Dr. Lamb's assessment in favor of non-examining physicians, whose opinions are generally entitled to little weight. As a result of these errors, Plaintiff contends that ALJ's RFC determination did not accurately portray his physical and mental limitations and thus, the testimony of the vocational expert did not

4

constitute substantial evidence upon which the ALJ was entitled to rely.

In response, the Commissioner notes that the ALJ properly determined that Plaintiff's CTS is non-severe because: 2) there was no evidence that the impairment affected his ability to perform work-related activities, and 2) Plaintiff's repeated reliance on mere diagnoses is insufficient to establish a severe impairment.  The Commissioner notes that the ALJ discussed Plaintiff's history of CTS at length in his written decision, specifically the study conducted by Dr. Curt Zeiger in September 1998, which was more than four years before Plaintiff's alleged onset date, and the July 2003 report from consultative examiner Dr. Bobby Kidd.[1]  According to the Commissioner, the ALJ's finding that Plaintiff's CTS is not severe is not reversible error because, having determined that he suffered from other severe impairments (i.e., COPD, obesity, affective/adjustment disorder), the ALJ continued with the remaining steps of the sequential evaluation process, and considered Plaintiff's severe and non-severe impairments both singly and in combination.  *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240 (6th Cir. 1987).  With respect to Dr. Lamb's assessment, the Commissioner contends that: 1) opinions from one-time examiners are not entitled to controlling deference, *see* 20 C.F.R. § 404.1527(d)(1)-(2), and 2) the ALJ adequately explained why he discounted Dr. Lamb's opinion in his written decision.  Specifically, the ALJ gave Dr. Lamb's assessment little probative weight because it was inconsistent with the preponderance of the evidence and Dr. Lamb's own report.  For all these reasons, the Commissioner argues that the ALJ's decision should be affirmed.

---

[1] According to the Commissioner, to the extent Plaintiff relies on post-decision evidence submitted to the Appeals Council, that evidence may be used only to determine whether remand under sentence six of 42 U.S.C. § 405(g) is warranted.

The Sixth Circuit has repeatedly held that the Step 2 severity regulation is a "de minimis hurdle in the disability determination process." *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (per curiam). Under this view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citing *Farris v. Sec'y of Health and Human Serv.*, 773 F.2d 85, 90 (6th Cir. 1985)); 20 C.F.R. § 416.920(c). However, a claim that is "obviously lacking medical merit" can be dismissed if it is "totally groundless solely from a medical standpoint." *Id.* at 862-63 (*quoting* Farris, 773 F.2d at 90 n.1).

The question in this case is whether substantial evidence supports the ALJ's finding that Plaintiff's CTS is a slight abnormality that only minimally affects his work ability. *Farris*, 773 F.2d at 90. As noted by the Commissioner, the ALJ discussed Plaintiff's CTS at length in his written decision. In concluding that the impairment was non-severe, the ALJ relied upon the following evidence: 1) the July 30, 2003 report of consultative examiner Dr. Bobby Kidd; upon examining Plaintiff's hands, Dr. Kidd found no tenderness, redness, warmth, swelling, or atrophy, and noted that, using both hands, he could make a fist, oppose the thumb tip to the fingertips, write, and pick up coins without difficulty (Tr. 181); 2) Plaintiff's own testimony that he only experienced tingling and numbness in his hands while performing prolonged, repetitive work; and 3) the lack of temporal proximity between the nerve conduction studies performed by Dr. Zeiger, which were consistent with a diagnosis of CTS, and Plaintiff's alleged onset date. (Tr. 19).

Plaintiff, however, claims that the ALJ failed to consider the breadth of his testimony relating to his hands. According to Plaintiff, he cannot do routine tasks, such as driving, cooking, or home repairs using tools due to the pain in his hands, and he wears

6

braces/splints at night.  Nevertheless, absent any evidence from an acceptable medical source establishing what effect, if any, Plaintiff's CTS has on his ability to perform basic work activities, and in light of Dr. Kidd's assessment, the Court concludes that the ALJ's finding that Plaintiff's CTS does not constitute a severe impairment is supported by substantial evidence.  *See also Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 692-93 (6th Cir. 1985) (holding that substantial evidence did not support ALJ's conclusion of a nonsevere impairment where an abundance of evidence demonstrated that claimant's mental retardation affected her ability to work); *Farris v. Sec'y of Health and Human Services*, 773 F.2d 85, 90 (6th Cir. 1985) (holding that ALJ's decision that claimant did not have severe impairment was unsupported by substantial evidence in light of fact that claimant's treating psychologist and psychiatrist both stated unequivocally that she could not perform basic work activities when her symptoms were present).

The Court also concludes that the ALJ did not err in rejecting the opinion of consultative psychiatric evaluator Dr. Stephen Lamb.  Contrary to Plaintiff's suggestion, his opinion was not entitled to the presumptive weight accorded a treating physician's opinion.  Moreover, the ALJ provided sufficient reasons for rejecting it.  Dr. Lamb examined Plaintiff on July 19, 2003.  He noted that Plaintiff's overall fund of information was good, as was his capacity to calculate and concentrate; and his social judgment and remote memory was intact.  (Tr. 175).  Plaintiff denied ever having a pattern of being late for work, as well as any problems with supervisors or co-workers.  (Tr. 176).  Based upon his assessment,  Dr. Lamb diagnosed adjustment disorder with mixed emotional features, and a GAF score of 40.  (Tr. 176).  He offered the following medical source statement:

> [Plaintiff] is able to understand simple instructions but has difficulty in recalling that information. He is able to concentrate well, but is not able to perform tasks in a normal amount of time. He is not gregarious and is unlikely t[o] do well in social contexts, however, at this time, he is unlikely to be able to cope well with pressures and stressors such as those found in typical work settings.

(Tr. 176).

Plaintiff impliedly argues that the ALJ was required to adopt Dr. Lamb's opinion because he was the only examining physician of record. The Court disagrees, noting that Plaintiff's argument is legally unfounded. Plaintiff also argues that: 1) the opinion of an examining source can only be rejected for specific and legitimate reasons, and 2) the opinion of a non-examining source is entitled to little weight and cannot be used to reject an examining or treating source. As Plaintiff relies on authority that is not binding on this Court, the Court finds these arguments unconvincing.

Based upon the foregoing, the Court concludes that the ALJ did not err in finding that Plaintiff's CTS is a non-severe impairment, or rejecting Dr. Lamb's assessment because it was inconsistent with, and unsupported by, his clinical findings. Therefore, the Court also concludes that the ALJ's RFC assessment accurately portrayed Plaintiff's physical and mental impairments, and the testimony of the vocational expert constituted substantial evidence upon which the ALJ was entitled to rely.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. # 5) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #7) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 5th day of September, 2006.

Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-06-26-PerryMOO.wpd